IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 14-cv-01006-BNB

DONALD RODERICK,

Plaintiff,

v.

GATBEL N. CHAMJOCK, PA, and
HELENE CHRISTNER, PA,

Defendants.
_____

**ORDER**
_____

This matter arises on **Defendants' Motion to Dismiss** [Doc. #19, filed 07/21/2014] (the "Motion").[1] The Motion is GRANTED.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537

---

[1] The plaintiff filed "Plaintiff's Answer to Defendants' Motion to Dismiss [Doc. #24] and "Plaintiff's Amended Complaint Answer to Motion to Dismiss [Doc. #25]. Neither filing contains a proposed amended complaint; both filings are responses to Defendants' Motion to Dismiss.

F.2d 385, 386 (10th Cir. 1976).  The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief.  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II.  BACKGROUND

The plaintiff is incarcerated by the Colorado Department of Corrections ("DOC") at the Sterling Correctional Facility ("SCF").  He filed his Prisoner Complaint on April 7, 2014 (the "Complaint").  The Complaint contains the following allegations:

1.  The plaintiff was diagnosed with heart disease in January 2010.  *Complaint*, p. 4.[2]

2.  In June 2012, he collapsed after completing a three mile run.  He was resuscitated and taken to the hospital.  "He subsequently underwent placement of a Medtronic single chamber D314VRM defibrillator" and was returned to the Colorado Territorial Correctional Facility.  Id.

3.  The plaintiff was "placed under monitoring and aftercare with Pueblo Cardiology Associates."  "Treatment ordered was to decrease the Amlodipine medication to 2.5 mg a day; continue all other medications; to undergo an ICD evaluation in three months; and then return for re-assessment in six months in December 2012 and March 2013."  Id. at p. 5.

4.  The plaintiff was transferred to SCF on September 27, 2012.  Id.

---

[2]I cite to the page numbers of the Complaint as they are assigned by the court's docketing system.

5. The plaintiff was not taken for the reassessment in December 2012. He submitted a medical request asking why he was not taken for the ICD evaluation. He never received a response. Id.

6. On March 26, 2013, the plaintiff was taken to "Colorado Heart and Vascular" in Denver where he was re-assessed by a physician. A check of the recording device on the defibrillator showed that he had experienced eight episodes of atrial fibrillation. "[I]t was also found that he was not receiving consistent refills on medication at his facility which is causing him to constantly stop and restart medications; and that he is unable to check his blood pressure regularly at his facility." He was ordered to stay on his current medications and return in June 2013 to re-evaluate his heart rhythms and assess if he needed additional medications. Id.

7. On May 16, 2013, the plaintiff experienced an episode of syncope. He fell and struck his head on the bed frame. He woke up in a pool of blood from the cut on his head. He notified prison officials but was not taken to the medical department or evaluated by any of the staff. Id.

8. On May 23, 2013, the plaintiff was called to the medical department about shoe insoles. He reported the May 16, 2013, incident to defendant Chamjock but nothing was done to evaluate the plaintiff's condition. The plaintiff's heart doctor was not contacted for a consult. Id. at p. 6.

9. On August 13, 2013, the plaintiff was taken to see his heart doctor. The appointment was supposed to occur in June 2013. The doctor found that the defibrillator device recorded 15 seconds of ventricular fibrillation before "appropriately shocking him back into normal sinus rhythm." Since the episode, the plaintiff has been experiencing chest pain, dizziness, headaches, and loss of taste and smell. The doctor reprogrammed the device and ordered Amiodarone 200

mg. per day; weekly blood pressure readings for determination of whether to increase the Lisinopril medication; and an EKG each month after starting the Amiodarone to make sure he was not having heart rhythm disorders. Id.

10. On August 30, 2013, the plaintiff was finally started on the Amiodarone. However, the medical department has not provided the plaintiff with the EKG as of April 7, 2014. Id.

11. On December 1, 2013, the plaintiff submitted a medical request reminding the medical department that he was scheduled to see his heart doctor in November 2013. On December 4, 2013, the plaintiff received a response stating that the November appointment had been denied by the DOC's insurance provider. Id.

12. On January 25, 2014, the plaintiff submitted a request to the medical department for a refill of the Amiodarone. He was informed that the medication "did not start until February 20, 2014." This caused the plaintiff to "have to stop and restart the Amiodarone medication contrary to" the heart doctor's orders "and placing the plaintiff [sic] health in jepordy [sic] of recurring cardiac arrest." Id.

The Complaint asserts three claims for relief. Claim Three has been dismissed [Doc. #7]. Claim One asserts that the defendants' actions and non-actions in failing to carry out medical orders including failure to provide a consistent supply of medications, reschedule appointments, and provide EKG tests, have endangered the plaintiff's health and life in violation of his Eighth Amendment rights. Id. Claim Two asserts that the defendants' actions and inactions constitute a "state tort claim for negligence." Id. at p. 7. The plaintiff is suing the defendants in their individual capacities. Id. at p. 4. He seeks injunctive relief and punitive damages. Id. at p. 10.

### III. ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A. Claim One

The defendants raise the defense of qualified immunity. *Motion*, p. 5. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I consider two factors. I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right. In addition, I must inquire whether the right was clearly established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).[3]

---

[3] The order in which I may consider these factors is discretionary. Pearson v. Callahan, 555 U.S.223, 236 (2009). However, both prongs must be satisfied. Herrera v. City of

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care and take "reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted). A prisoner claiming an Eighth Amendment violation must establish both objectively and subjectively that particular conditions of confinement constitute cruel and unusual punishment. Wilson v. Seiter, 501 U.S. 294, 297-298 (1991). To satisfy the objective component, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. To satisfy the subjective component, a plaintiff must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm. Farmer, 511 U.S. at 834. The subjective component of a deliberate indifference claim is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

The plaintiff has failed to allege specific facts to state a plausible claim that either of the defendants were deliberately indifferent to a substantial risk of harm to the plaintiff. Plausibility refers to "the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Robbins v. Okla. ex rel. Dep't of Human Servs., 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

---

Albuquerque, 589 F.3d 1064, 1070 (10th Cir. 2009).

570 (2007)). "[A] plaintiff must offer sufficient factual allegations to raise a right to relief above the speculative level." Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (internal quotations and citation omitted). The complaint must explain what each defendant did to the plaintiff; when the defendant did it; how the defendant's action harmed the plaintiff; and what specific legal right the plaintiff believes the defendant violated. Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007). "In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." Robbins, 519 F.3d at 1250.

The Complaint contains only vague and conclusory allegations against the defendants. At the end of several pages of detailed allegations, including detailed allegations against non-defendants, the plaintiff summarily states that defendants Chamjock and Christner failed to carry out the medical orders of his heart doctor, failed to provide a consistent supply of medications, and failed to reschedule appointments with the doctor. He alleges only one incident involving Chamjock:

> On May 23, 2013, the plaintiff was called to the facility medical department about shoe insoles and he reported the May 16, 2013 incident (where the plaintiff fell and hit his head) to Gatbel N. Chamjock, PA and still nothing was done to evaluate the plaintiff's condition or to contact Dr. Ptasnik for consultation on the incident.

*Complaint*, p. 6.

These allegations fall short of the specific factual allegations necessary to impose liability for the violation of a constitutional right. Claim One is dismissed for failure to state a claim upon which relief can be granted, and the defendants are entitled to qualified immunity on the claim.

## B.  Claim Two

In Claim Two, the plaintiff alleges that the defendants' actions constitute the state tort of negligence. This court may decline to exercise supplemental jurisdiction over a plaintiff's state tort claims when it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because the plaintiff has failed to state a claim for violation of his constitutional rights, I decline to exercise supplemental jurisdiction over the remaining state law negligence claim.

## IV.  CONCLUSION

IT IS ORDERED:

(1)  The Defendants' Motion to Dismiss [Doc. #19] is GRANTED;

(2)  Claim One is DISMISSED WITH PREJUDICE, and judgment shall enter in favor of the defendants on Claim One; and

(3)  Claim Two is DISMISSED WITHOUT PREJUDICE.

Dated November 18, 2014.

                              BY THE COURT:

                               s/ Boyd N. Boland
                              United States Magistrate Judge

8